**Densil MULLINS, Appellant,**

**v.**

**KENTUCKY POWER COMPANY, Appellee.**

Court of Appeals of Kentucky.

Nov. 12, 1965.

Harold Garland Wells, Courtney C. Wells, Hazard, for appellant.

Willis W. Reeves, Reeves, Barret & Cooper, Hazard, for appellee.

STEWART, Judge.

This action was brought by appellant, Densil Mullins, against appellee, Kentucky Power Company, to recover damages for injuries he allegedly received from a shock and burns when a television wire he was manipulating came in contact with an electrical wire owned by Kentucky Power Company.

At the close of all the evidence a motion for a directed verdict in favor of Kentucky Power Company was sustained. Mullins has appealed.

It is Mullins' contention that the doctrine of res ipsa loquitur is available under the evidence presented. A summary of the pertinent facts follows.

On July 5, 1963, around 5 p. m., Mullins, a resident on Acup Creek in Perry County, according to his testimony, was removing an old television line from his premises. This line ran from his house, which sits on a hill, thence over a creek and a road immediately below, across a field and up a hill; it traversed an estimated distance of 600 feet. It was attached to a post at the edge of a near-by cornfield and to a tree at the other side. In this fashion it was suspended across the cornfield and was above it about 12 feet.

Running lengthwise through this cornfield, and more or less at right angles to the course of the television line, was appellee's 7200 volt three-phase power line. There were two live conductor wires strung between the crossarms of two poles 300 feet apart. These wires were 29½ feet above the ground; and a neutral or dead conductor wire was about 30 inches below the two live conductor wires. Below appellee's three-phase power line, approximately fourteen feet from the ground, was a telephone line. This line passed over the television line about two inches above it. The television line was located approximately midway of the two poles.

Mullins testified he went to the top of his residence, detached the television line and dropped it to the yard. He descended and picked up the line with one hand. He then started to pass the line around a bush to drop it into the creek below his house. Just as he reached around the bush, he received an electric shock, with the result that he was pitched up into the air and thrown down the hill, into the creek about 30 feet below. Mullins suffered non-disabling injuries.

Mullins' wife and Carl Combs, a neighbor, saw the accident; they corroborated Mullins' testimony as to how it occurred. They also stated that, when Mullins got his shock, they observed blue fire and smoke start up over the cornfield in the vicinity of appellee's power line. Edward Burgett, who also testified in behalf of appellant,

stated that after appellant was hurt he, Burgett, went to the cornfield and saw the television line and one of the wires of the power line lying upon the ground. Both were burned in two.

Charles Lovelace, an employee of the company which had strung the telephone wire on appellee's poles, was introduced as a witness for appellee. Lovelace stated that on the occasion of the purported accident he was working on the telephone line, about 25 to 30 feet up on a pole, when he saw a person he could not identify "above the cornfield a little * * * wad up something, I could not make out what it was, and he threw it." Next he heard a "sizzing" sound and noticed a man fall "off the bank down into the creek" at the Mullins house.

Morgan Ozee, a personnel supervisor for appellee and a witness for it, testified he went, four days after Mullins' mishap, to the site where the television line and one of the wires of the power line were lying upon the ground in the cornfield. In the immediate vicinity he found a rock with a section of the television line tied or twisted around it. He took three pictures of the rock with the line attached to it, and these were filed as exhibits in this case. According to Ozee's testimony, there were "about six or eight feet hanging onto it, and it was burned on the other end."

A. R. Barber, appellee's division manager, testifying in its behalf, stated that appellee's power line was constructed and had been maintained in accordance with standards set by the National Electric Safety Code and in keeping with the regulations of public electric utility companies. Barber also testified, and his statement in this respect was never contradicted, that the wire of the severed power line, found lying upon the ground, was a neutral or dead conductor. Barber, in answer to a hypothetical question propounded to him as an expert electrical engineer, as to how this neutral or dead conductor could communicate electricity, expressed the opinion that, by some means unknown to appellee, some one had caused the television line to unite with one of the live conductors of the power line. While the television line was thus energized it had made contact with and transmitted electricity through the neutral or dead conductor, which was strung below the two live conductors.

It was shown that appellee had acquired an easement for the construction and maintenance of its power line. It was also shown that appellant had run his television line across appellee's easement and under its power line, without appellee's knowledge or consent.

Appellant takes the position that, under the facts recited, the principle of res ipsa loquitur is applicable. In this connection, he relies upon this rule which is stated in 18 Am.Jur., Electricity, sec. 110, pp. 504, 505:

"* * * The mere introduction of facts surrounding an injury from electricity showing that such injury resulted from contact with live electric wires or other appliances when out of proper condition or out of their proper place, may suffice under the doctrine of res ipsa loquitur to raise a prima facie presumption that the electrical company having such appliance in charge was negligent in the performance of its duty and to place upon the company the burden of overthrowing such presumption. * * * It is within the power of electric companies at all times to show whether they have exercised due care in the erection and subsequent supervision and maintenance of their wires and appliances, while in many cases it would be almost impossible for the person injured to prove an actionable failure of duty in these things."

Appellant produced no evidence which in any wise tended to show that appellant's injury stemmed from a violation of any duty appellee owed him. Specifically, he introduced no testimony that appellee's fa-

cilities where the accident occurred were defective in any respect. Notwithstanding the absence of any proof of want of care upon its part, appellee established by the testimony of its division manager that its power line had been properly constructed and subsequently maintained in accordance with the highest standards applicable to public electric utility companies.

Furthermore, appellee introduced the testimony of one eyewitness whose statements the trial court no doubt believed pointed up the cause of appellant's mishap. This was proof to the effect that appellant's electrical shock was received while some unknown person was attempting to fling over the power line what turned out to be a rock with a length of the television line tied or twisted around or on to it. One could well believe appellant had hold of the other end of this television line. The evidence is clear that the neutral or dead conductor fell at about the time the television line made contact with it. According to the expert testimony introduced in this case, the neutral or dead conductor could not have become energized unless it was united by some agency with one of the two live conductors above it. The television line must have been the connection between the neutral and the live conductors, thereby becoming charged itself, because appellee received his electrical shock through this line.

We therefore believe appellee's evidence revealed that the accident was due to the intervention of some cause with which it had nothing to do. It occurred from the attempted removal of the television line, which was owned, maintained and controlled by appellant. In addition, it appears it had been located on and across appellee's easement by an act of trespass. Prosser in his work on the Law of Torts (2d Ed.), in pointing out the necessity in a res ipsa loquitur case of bringing an act of negligence home to the defendant in order to attach liability, makes this relevant statement on pages 204, 205:

"  *   *   *  On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where it is clear that it is at least equally probable that the negligence was that of another, the court must instruct the jury that the plaintiff has not proved his case. The injury must be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that he was responsible for all reasonably probable causes to which the accident would be attributed.  *   *   *  "

The conclusion we have reached makes it unnecessary to consider the contributory negligence contention advanced by appellee.

Wherefore, the judgment is affirmed.